IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>RALPH DAVILA-SANCHEZ<br>Defendant | CRIMINAL 06-0166CCC |
|---|---|

# O R D E R

Defendant Ralph Dávila-Sánchez filed a Motion to Suppress Statements and Evidence on September 14, 2006 (**docket entry 29**) seeking to exclude from his trial statements made to government agents after his arrest and video tapes and other items seized from his home.  Defendant avers that he is a seventy-four year old man, legally blind and suffering from dementia, who could not consent to the waiver of his Miranda rights or to the search of his house as claimed by the government agents.  See United States' Response in Opposition to Defendant's Motion to Suppress filed on October 12, 2006 (**docket entry 41**).  The Motion was referred to U.S. Magistrate-Judge Vélez-Rivé on September 22, 2006 (docket entry 33), who after holding a hearing on October 11, 2007,[1] recommended on October 22, 2007 that it be denied (**docket entry 77**).

Defendant objected to the Magistrate-Judge's Report and Recommendation (R&R) on November 5, 2007 (**docket entry 79**), claiming that she improperly excluded the testimony of defendant's eye doctor on the issue of whether he could read and understand the Miranda waiver form or search consent forms signed by him and that she incorrectly concluded that the arresting agent had probable cause to detain defendant immediately after he examined the videos when he allegedly testified just the opposite.  Defendant also contends that he was not Mirandized by the agents prior to being questioned and that the

---

[1] The suppression hearing was delayed while defendant was evaluated, at his request, to determine whether he was mentally competent. The Court found the defendant to be competent on September 25, 2007 (docket entry 72).

agent's admission that the search consent form was not filled by him evidenced that he could not complete the form himself.

The United States replied to the objections on December 17, 2007 (**docket entry 86**), claiming that defendant raised in his objections matters not included in the suppression motion, such as the alleged lack of probable cause to arrest him. The government also reasserts that defendant was duly advised of his Miranda rights and voluntarily waived them and expressly consented to the search of his residence both orally and in writing.

All the relevant facts are narrated in the Report and Recommendation so, to the extent they are not challenged by defendant, we will not repeat them here. We have reviewed the transcript of the suppression hearing, filed on January 22, 2008 (docket entry 92) in compliance with the Court's Order dated January 10, 2008 (docket entry 90) that required their preparation, and now OVERRULE all of defendant's objections to the Report and Recommendation.

Defendant's challenge to the exclusion by the Magistrate-Judge of a portion of the testimony of his eye doctor, Dr. Osvaldo Carilles, is simply vapid. The transcript reflects that at one point during the doctor's direct examination defendant's counsel intended to elicit an expert opinion from him, without ever having complied with the requirements established by the Rules for this particular kind of testimony.[2] Thus, his inability to present the doctor's expert testimony resulted from his own omissions, and any prejudice to his suppression endeavor resulting from it was self-inflicted.

On the issue of whether agent Feliciano had probable cause to arrest defendant immediately after he examined the videos, as the Magistrate-Judge determined, we concur with her conclusion. Feliciano testified on direct that some of defendant's videos contained minors engaged in sexual conduct, and specifically noted that in one of the scenes there was a minor that appeared to be 10 years old. While in cross-examination he admitted that at some point a doctor would have been required to examine the videos to determine the

---

[2] In fact, it was not until November 13, 2007, after the suppression hearing had been held, that defendant first disclosed that he intended to use Dr. Carilles as an expert witness on the issue of his ability to read and observe the features of others. See Disclosure of Expert Witness (docket entry 81).

age of the minors videotaped, since he was not an expert identifying the ages of individuals, and that this examination by the doctor took place the following day, in redirect he testified that he had worked in the squad specialized on child pornography for five years, participating in about 40-50 investigations in which he viewed thousands of child pornography images, and that upon looking at an image he was able to determine whether a female was under 18 years old.  Certainly, agent Feliciano's experience in the child pornography squad provided him with sufficient expertise to determine whether there were minors involved in defendant's pornographic videos and, once he saw the videos and confirmed that such was the case, he obtained probable cause to arrest defendant.  The question is one of probability, and all of the available indications, given Feliciano's perceptions and his experience in estimating the ages of children involved in pornography cases, was that at least one of the females videotaped was probably under 18, which was sufficient to supply him with probable cause to arrest defendant for knowingly possessing child pornography. There is simply no merit in defendant's objection to the Magistrate-Judge's conclusion on the attainment of probable cause to arrest defendant.

Defendant's claim that he was not Mirandized prior to being questioned by the Custom agents is also defeated by the undisputed testimony of agent Feliciano, who attested to the contrary.  Defendant, who did not testify during the suppression hearing, now attempts to convey that since his plane arrived at the airport at 12:25 P.M. and he was not Mirandized until 3:43 P.M. as reflected by the waiver form, he must have been interrogated during the more than three hours that elapsed before he was read and waived his Miranda rights.  Agent Feliciano's testimony does not allow for such an inference, however, as he explained that after defendant arrived to the airport and before he (Feliciano) was contacted by Customs inspectors defendant had to undergo the initial Customs inspection, a secondary Customs inspection, the inspectors then reviewed defendant's nineteen videos and after finding child pornography on two of those videos he was called to the scene.  Once at the airport, but before interviewing defendant, Feliciano and his companion agent, Luis Ortiz, also reviewed the offending videos.  Certainly, all these events, plus the usual incidents associated to air travel (debarkation from the plane, immigration/passport inspection, etc.,) would serve to explain the three-and-a-half hour time lapse between

defendant's arrival at the airport and his waiver of rights before agent Feliciano. Defendant's contention that "common sense dictates a conclusion that Mr. Dávila-Sánchez was not Mirandized until hours after questioning began" (Objections, docket entry 79, at p. 3) is simply speculative and not supported by the evidence.

Finally, and as to defendant's averment that because he failed to fill the search consent form it necessarily meant that he could not complete the form itself, the uncontroverted testimony of agent Feliciano belies this. Feliciano testified that defendant had verbally consented to the search of his residence before that form was signed, that all the information included in the search consent form was provided by defendant, and that the form was signed by defendant. Feliciano also declared that defendant never indicated at any time that he had a physical impairment, and that he answered all questions posed to him in a coherent manner. As there is no evidence on record which either directly or inferentially would lend factual support to defendant's allegation that he could not complete the search consent form, once again his objection remains on the realm of speculation and, consequently, fails.

In sum, the evidence presented at the suppression hearing establishes that defendant voluntarily and knowingly waived his Miranda rights and consented to the search of his house. Accordingly, the Report and Recommendation of U.S. Magistrate-Judge Vélez-Rivé is APPROVED and ADOPTED and defendant's Motion to Suppress Statements and Evidence filed on September 14, 2006 (**docket entry 29**) is DENIED.

SO ORDERED.

At San Juan, Puerto Rico, on February 21, 2008.

S/CARMEN CONSUELO CEREZO
United States District Judge